MCLAUGHLIN & NARDI, LLC
Attorneys for Plaintiffs
Wilenta Feed, Inc. and Wilenta Carting, Inc.
37 Vreeland Avenue
Totowa, New Jersey 07512
(973) 890-0004

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| WILENTA FEED, INC., and WILENTA CARTING INC., | : : : CIVIL ACTION NO.: |
| Plaintiffs, | : : : |
| v. | : : |
| HELMER TORO, AMY DUKOFF TORO, THE FIRST TORO FAMILY LP, THE THIRD TORO FAMILY LP, THE FOURTH TORO FAMILY LP, THE FIFTH TORO FAMILY LP, THE SIXTH TORO FAMILY LP, 35 REAL ESTATE LP, GARDEN OPERATION REALTY LP, GARDEN OPERATION CORP.,MANHATTAN WEST SIDE LP, MANHATTAN EMPLOYEE SERVICE, INC., WESTMILL LP, WINGATE LP, CITYWIDE SERVICING GROUP, INC., JERSEY EMPLOYEE SERVICE CORP, HUDSON SALES AND MARKETING, INC., UNITED PRODUCTION SERVICE, INC., YXZ III, INC., QRS II, INC., TUV V, INC., SRQ IV, INC. ABC ENTITIES 1-100, JOHN DOES and JANE DOES 1-100. | : : : **COMPLAINT AND** : **JURY DEMAND** : : : : : : : : : : : : : : : : : : |
| Defendants. | : |

Plaintiffs, Wilenta Feed, Inc. and Wilenta Carting, Inc., by and through their attorneys,

McLaughlin & Nardi, LLC, complain of Defendants as follows.

## THE PARTIES

**a.    Plaintiffs.**

1.    Plaintiff, Wilenta Feed, Inc. ("WFI") is a New Jersey corporation with its principal place of business at 46 Henry Street, City of Secaucus, County of Hudson, State of New Jersey.

2.    Plaintiff, Wilenta Carting, Inc., ("WCI") is a New Jersey corporation with its principal place of business at 46 Henry Street, City of Secaucus, County of Hudson, State of New Jersey.

**b.    Defendants.**

3.    Defendant, Helmer Toro, is an individual residing at 155 West 70th Street, New York, New York.

4.    Defendant, Amy Dukoff Toro is an individual residing at 155 West 70th Street, New York, New York.

5.    Defendant, The First Toro Family LP is a New York limited partnership with its principal place of business at 2239 Broadway, New York, New York.

6.    Defendant, The Third Toro Family LP is a New York limited partnership with its principal place of business at 1995 Broadway, 18th Floor New York, New York.

7.    Defendant, The Fourth Toro Family LP is a New York limited partnership with its principal place of business at 1995 Broadway, Suite 1800, New York, New York.

8.    Defendant, The Fifth Toro Family LP is a New York limited partnership with its principal place of business at 639 West 46th Street, New York, New York.

9.    Defendant, The Sixth Toro Family LP is a New York limited partnership with its principal place of business at 639 West 46th Street, New York, New York.

10.    Defendant, Manhattan West Side LP is a New York limited partnership with its principal place of business at 2239 Broadway, New York, New York.

11.   Defendant, Manhattan Employee Service, Inc., in a New York corporation.  Its registered agent is Spiegel & Utrera, P.A., P.C. located at 45 John Street, Suite 711, New York, New York.

12.   Defendant, Westmill LP, is a New York limited partnership with its principal place of business at 639 W. 46th Street New York, New York.

13.   Defendant, Wingate LP, is a New York limited partnership with its principal place of business at 639 W. 46th Street New York, New York.

14.   Defendant, Citywide Servicing Group, Inc is a New York corporation.  Its registered agent is Spiegel & Utrera, P.A., P.C. located at 45 John Street, Suite 711, New York, New York.

15.   Defendant, Hudson Sales And Marketing, Inc., is a New York corporation with its principal place of business at 30 Quail Close, Irvington, New York.

16.   Defendant, Jersey Employee Service Corp, is a New Jersey corporation with its principal place of business at 35 UPS Drive, Secaucus, NJ. Its registered agent is Spiegel & Utrera, PA located at 642 Broad Street, Suite 2, Clifton, NJ.

17.   Defendant, 35 REAL ESTATE LP is a New Jersey limited partnership with its principal place of business at 35 UPS Drive, Secaucus, NJ.  Its registered agent is Herbert S. Ford, of Marcus, Brody, Kessler, & Sahner, LLC, located at 5 Becker Farm Road, Roseland, NJ.

18.   Defendant, Garden Operation Realty LP is a New Jersey limited partnership, with offices and its principal place of business at 35 UPS Drive, Secaucus, County of Hudson, New Jersey. It also has business operations located, *inter alia*, at 13 Ann Street, Jersey City, County of Hudson, New Jersey.

19.   Defendant, Garden Operation Corporation is a New Jersey corporation with offices and doing business at 35 UPS Drive, Secaucus, County of Hudson, New Jersey.

3

20.   Defendant, United Production Service, Inc. is a New York corporation with its principal place of business at 1 Maiden Lane, 5th Floor, New York, New York. Its registered agent is listed as Spiegel & Utrera, PA, PC, located at 1 Maiden Lane, 5th Floor, New York, New York.

21.   Defendant, YXZ III, Inc. is a New York corporation.  Its registered agent is Spiegel & Utrera, PA, PC, located at 45 John Street, Suite 711, New York, New York.

22.   Defendant, QRS II, Inc. is a New York corporation.  Its registered agent is Spiegel & Utrera, PA, PC, located at 45 John Street, Suite 711, New York, New York.

23.   Defendant, TUV V, Inc. is a New York corporation with its principal place of business at 2239 Broadway, New York, New York.  Its registered agent is Spiegel & Utrera, PA, PC, located at 45 John Street, Suite 711, New York, New York.

24.   Defendant, SRQ IV, Inc. is a New York corporation with its principal place of business at 155 West 70th Street, New York, New York.  Its registered agent is Spiegel & Utrera, PA, PC, located at 45 John Street, Suite 711, New York, New York.

25.   Defendants, ABC Companies 1-100, being fictitious names, are upon information and belief business entities engaged in and/or are responsible for the acts and/or omissions complained of herein.

26.   Defendants, John and Jane Does 1-100, being fictitious names, are upon information and belief individuals who participated in and/or are responsible for the acts and/or omissions complained of herein.


## VENUE AND JURISDICTION

27.   Jurisdiction rests with the United States District Court under Federal Question

Jurisdiction, 28 U.S.C.S. §1331.

28. Venue is applicable in the District Court of New Jersey as Plaintiffs and many of the Defendants and because a substantial part, if not all, of the events or omissions giving rise to the claim occurred are residents of the State of New Jersey pursuant to 28 U.S.C.S. §1391.

29. Supplemental jurisdiction over Plaintiffs' state law claims is proper pursuant to claim 28 U.S.C.S. §1367 as they are inextricably related to and derived from a common nucleus of operative fact with clear federal claims.

## NON-BINDING ARBITRATION NOT APPLICABLE

30. The matter in question involves a judgment debt based upon an arbitration award by the American Arbitration Association ("AAA") (case number 18 181 M 00659 09). (Attached hereto as Exhibit "A" is the Final Award of Arbitrator entered on March 30, 2010 by the American Arbitration Association.)

31. The Final Award of The Arbitrator was in Plaintiffs' favor is broken down as follows: (a) In the amount of $148,369.08 against Defendants jointly and severely and in favor of Plaintiff, Wilenta Feed Inc.; and (2) in the amount of $49,498.95 against Defendants jointly and severely in favor of Plaintiff, Wilenta Carting Inc. (Id.)

32. The total award was $197,868.03.

33. The matter was entered as a judgment in the Superior Court of New Jersey, Hudson County. (A copy of that Order for Judgment is attached hereto as Exhibit "B.")

34. Defendants have failed to pay the award.

35. The arbitrator also awarded costs, counsel fees and interest.

36. The Superior Court also entered a Second, Supplementary Order For Judgment in the

sum of $29,352.47. (The Second, Supplementary Order For Judgment is attached hereto as Exhibit "C.")

37. The total amount in question is therefore $227,220.50, plus continuing costs, counsel fees, interest and punitive damages.

38. The amount in question thus exceeds the limit for mandatory non-binding arbitration in the Local Rule 201.1.

39. Moreover, it involves 25 identified Defendants, and is thus not suited for mandatory non-binding arbitration in the Local Rule 201.1.

## FACTUAL BACKGROUND

40. All allegations of paragraphs 1 through 39 are incorporated herein as though repeated verbatim and at length.

41. Throughout Plaintiffs' dealings with Defendants, Plaintiff has had difficulties distinguishing between each Defendant and each business entity.

42. The individually named Defendants – Helmer Toro and Amy Dukoff Toro - have established these business entities to avoid judgment creditors and lawsuits.

43. Helmer Toro has full managerial authority over each company.

44. Ninety-five percent of each limited partnership (except the Manhattan West Side LP and the West Midtown LP) is owned by Amy Dukoff Toro.

45. Amy Dukoff Toro is a limited partner in all of the limited partnerships except the Manhattan West Side LP and the West Midtown LP.

46. The limited partner for the Manhattan West Side LP and the West Midtown LP is Philip Toro, Helmer Toro's brother.

47. Five percent of each and every limited partnership is owned by a corporation wholly

owned by Helmer Toro.

48.  Helmer Toro's various corporations each act as a general partner for each limited partnership.

49.  Therefore, Helmer Toro has full managerial authority over each limited partnership as the sole owner of each general partner corporation.

50.  Several of the corporations that act as general partners for the limited partnerships seem to have been dissolved by proclamation, leaving several of the limited partnerships without a general partner.

51.  However, these limited partnerships are still active as per the New York State Department of State.

52.  For instance, the Fourth Toro Family LP's only general partner was New York West Side Bagels, Inc.

53.  However, New York West Side Bagels, Inc has been listed by the New York State Department of State as inactive due to "dissolution by proclamation/annulment of authority" as of December 29, 1999.

54.  The Defendants engage in interstate commerce, specifically in New York and New Jersey in the manufacture, transport, and sale of bagels and other related products.

55.  Defendants also sell and deliver bagels to entities outside the country.

56.  Plaintiffs had a course of commercial dealing with Defendants, collectively operating as "H&H Bagels," in which Defendants breached various contractual obligations.

57.  The Contract between the parties stated that it was between Plaintiffs and "H&H Bagels, Inc."

58.  However, Defendants had no such interest in an "H&H Bagels, Inc."

59.  The Contract had an arbitration clause.  Arbitration was held before the AAA, resulting in the Final Award of The Arbitrator (Exhibit "A") and the two Superior Court judgments against Defendants Helmer Toro, Garden Operation Corp. and Garden Operation Realty, LP.

60.  Defendants have failed and refused to pay the arbitration award or judgments.  The time to appeal has expired.

61.  However, before entering to the Contract, at the time of its execution, throughout the course of the Parties' relationship, after its termination, during the pendency of the AAA proceedings, during the pendency of the Superior Court proceedings, after the Superior Court judgments were entered, and through today, the Defendants have engaged in a course of conduct designed to transfer assets to prevent payment or collection of the amounts they owed.

62.  Plaintiffs have been unable to collect on the judgment because Defendants constantly move their assets and income back and forth between the many corporations and limited partnerships set up by Helmer and Amy Dukoff Toro.

63.  For example, Defendant Helmer Toro has transferred his interest in the Business entity Defendants to his wife, Defendant, Amy Dukoff Toro, an insider.

64.  Additionally, the businesses have made repeated fraudulent transfers to prevent payment or collection.

65.  For instance, Garden Operation Realty LP makes H&H Bagels actual bagels, approximately 19,000 per day.  It sells them solely to Defendants First Toro Family Limited Partnership ("First") and Sixth ("Sixth") Toro Family Limited Partnership.

66.  As a result, First and Sixth have accounts payable to Garden Operation Realty, LP.

67.  All of the Defendants utilize the same controller, one Hank Hoffman, who is not even sure which of the Defendant he is an employee of.

68.  The Chief Financial Officer of all of the defendant business entities is Defendant Helmer Toro, and is involved in minute, day to day, micro-management of all financial details of every company.

69.  Mr. Hoffman stated that Helmer Toro has sole discretion to determine how much each company pays each other in their related operations.

70.  Mr. Hoffman testified Mr. Toro normally directs First and Sixth pay approximately fifty per cent of what it receives in revenue for the sale of the bagels to the manufacturer.  However, Mr. Toro can determine the amount to be anything he wants – from one hundred per cent to nothing.

71.  Since its operations began, however, First and Sixth have paid Garden Operation Realty LP nothing, despite that fact that using the fifty per cent ratio, as Mr. Hoffman testified would be normal, they would now owe Garden Operation Realty LP approximately $3,500,000.

72.  They have paid Garden Operation Realty LP nothing on this balance so that it could not be seized by Plaintiffs, its judgment creditors.

73.  Ms Dukoff Toro, a dentist by trade, maintains that although she holds a 95 per cent partnership interest, but is paid nothing nor shares in any losses, despite the fact that defendants have more than $14,000,000 in annual sales and make more than 19,000 bagels per day, she has nothing to do with the businesses – itself an indicia of fraudulent transfer of the ownership interest.

74.  However, besides being a dentist, she is also an author, and sells her book, "Bagel Thoughts" solely through "H&H Bagels" website.

75.  And despite the fact that Ms. Dukoff Toro is a 95 per cent partner, Helmer Toro testified that he has no partners, the employees work for him, all the people are under him – that it's all

9

him, "24/7, okay?  For forty years."

76.  Also, the business entity Defendants, and Helmer Toro, do not place the checks they receive into bank accounts.  Rather, they utilize check cashing services so that the funds never are placed in bank accounts so they can never be seized by creditors, including Plaintiffs.

77.  When questioned about this, Mr. Toro responded thus.

> Q. But it's not checks; it's not wires; it's cash?
> A. Cash, cash right.
>          * * *
> Q. So all your business is done in cash?
> A. That's correct.
>          * * *
> Q. So all your business is done in cash?
> A. That's Correct.

78.  Indeed, the other businesses pay those of Garden Operation Realty LP's bills which actually are paid.  And that way, it never has to take possession of any funds, and is thus never susceptible to having any of its assets seized to pay its obligations.

79.  As an example of how this works, Mr. Toro testified that he and 35 Real Estate Limited Partnership, Garden Operation Corporation and Garden Operation Realty LP are being sued because they have not paid a business loan secured by the Secaucus property.  He also testified that initially First and Sixth paid Garden Operation Corporation and Garden Operation Realty LP's rent to 35 Real Estate Limited Partnership, even though it was not the tenant, and again ensuring that no funds were placed in Garden Operation Corporation and Garden Operation Realty LP's accounts, but they have ceased because of the suit, and will not recommence until the lender has agreed to modify and reduce the loan.

80.  Also, approximately 75 employees make the bagels at Garden Operation Realty, LP's Secaucus plant.  However, they are not employed by Garden Operation Realty LP or Garden Operation Corporation, but rather by defendant Jersey Employee Service Corp.

81. Garden Operation Realty, LP does not pay funds to Jersey Employee Service Corp. for the employees, however, nor does Jersey Employee Service Corp. keep money in its accounts.

82. Rather, Jersey Employee Service Corp. issues its employees checks for which there are no corresponding funds in the account.  Rather, the employees must take checks to First or Sixth's stores in Manhattan, and be paid in cash from the sales there.

83. As Toro testified:

> Q. …there's never any money in that [payroll] account?
> A. That's correct.  That's correct.  I mean, there might be a hundred dollars just to keep the bank account open, you know, something like that, you know.

84. Indeed, Mr. Hoffman admitted that these "paychecks" "would bounce down the street," and could not be transferred for value and could not be considered negotiable instruments.

85. As Mr. Hoffman testified:

> Q. What if the employee just decided they wanted to put it in their bank account.
> A. We've had nobody like that.  If they did, then we would have to probably put some money into the account itself.
> ***
> Q. Isn't that odd?
> A. Yes.

86. Indeed, the employment company has no supervisors.  It's benefits operations are handled by the employees of the other Defendants, except that even the controller cannot determine who these employees really work for.

87. Additionally, each of the operational businesses is owned by a partnership.  Amy Dukoff Toro is the owner of a 95 per cent limited partnership interest, even though her total investment in the businesses represents less than a fraction of one day's sales, and she allegedly receives no profits or compensation.  The five percent general partnership interest is held by corporations owned by Helmer Toro.

88. Indeed, Toro has admitted that regardless of which company handles the funds, he gets

all the money, so he structures the payments between companies around litigation, so long as at the end of the day he gets the money.

89.  Indeed, despite making 19,000 bagels per day – approximately 7,000,000 bagels per year – and giving them to the other Defendants, Garden Operation Realty, LP is paid nothing and has no finances at all.   Mr. Hoffman testified that despite these enormous manufacturing numbers, neither Garden Operation Corporation nor Garden Operation Realty LP have any assets at all.

90.  The cash registers are not computerized, they have tapes.  However, the major portion of the tapes is not saved.

91.  Moreover, despite the fact that Fourth Toro owns the "H&H Bagels" trade name, it is paid no more than a nominal fee, clearly indicating that it does not operate as a legitimate entity, but merely a façade to shield the prime asset of the other companies from creditors.  Indeed, it has no employees at all, and its operation is completely handled by employees of the other Defendants.

92.  All of Garden Operation Corporation and/or Garden Operation Realty LP's equipment is owned by First or Sixth, and yet there is no arm's length lease, nor any lease which actually contains any terms.  The companies pay each other whatever they feel like, and thus far, nothing. There is no set standard other than what Mr. Toro, who controls both lessor and lessee, wants: "He can set it at one dollar, one penny or one million dollars."

93.  These transfers have made collection efforts on Plaintiffs' parts futile.

## FIRST COUNT

**(Civil Violation of the Federal Racketeer Influenced and Corrupt Practices Act
Against Defendants Garden Operation Realty LP, Garden Operation Corporation, The
First Toro Family LP, The Third Toro Family LP, The Fourth Toro Family LP, The Sixth
Toro Family LP, Helmer Toro, Jersey Employee Service, Inc., ABC Entities 1-10, and John
Does 1-10)**

94. All allegations of paragraphs 1 through 93 are incorporated herein as though repeated verbatim and at length.

95. Defendants First Toro Family LP, Fourth Toro Family LP, Sixth Toro Family LP, Garden Operation Realty LP, Garden Operation Corporation, Jersey Employee Service, Inc., Helmer Toro, John and Jane Does 1-10, and ABC Entities 1-10, and each of them entered into and were employed by an enterprise, operating a web of inter-related companies all of which work together as one to operate the "enterprise" under the trade name "H&H Bagels," which scheme is ongoing and continuous, and has been ongoing and continuous for years.

96. The purpose of said scheme was to defraud their creditors, including Plaintiffs.

97. This scheme was centered on the creation of a web of business entities to conceal assets.

98. Upon information and belief, said Defendants transferred funds and related information by using the Postal Service and/or a private or commercial interstate carrier in violation of 18 USC §1341 and/or through the wiring of funds and related information in violation of 18 USC §1343.

99. Defendants and each of them participated in the affairs of the enterprise through a pattern of racketeering activity, all in interstate commerce, by engaging in numerous predicate acts to further their scheme.

100. By way of example only:

      a. On multiple occasions, indeed every payday, Defendants engaged in wire and mail fraud, 18 U.S.C.A. § 1343. Workers at Garden Operation Realty LP's place

13

of business, which were actually employed by Jersey Employee Service Corp., were paid through a payroll department which was also employed by Jersey Employee Service Corp., but which was paid by the Sixth, and was operated and managed by First. Both Defendants, Jersey Employee Service Corp. and Garden Operation Realty., transmitted information to the payroll company to prepare paychecks for the employees, and, in fact, such checks would be prepared and issued. These checks were prepared for Jersey Employee Service Corp. and would then be cashed by Defendants with funds from Sixth receivables. Jersey Employee Service Corp. never possessed funds sufficient to cash the checks. The checks themselves were fraudulent, as they were never funded and the employees could not exchange them for value in an arms length transaction – such as depositing them in or cashing them with a bank. Rather, the employees, who work in New Jersey, were required to go to stores operated by Defendants First and Sixth in New York to exchange them for cash. The purpose of these fraudulent usages of the wires, made through the wires and interstate commerce, was with knowing and voluntary intent to defraud creditors by knowingly ensuring that there were no assets through which creditors, including Plaintiffs, could satisfy their claims. These actions were taken under the direct instructions of Defendant, Helmer Toro.

b. Likewise, on multiple occasions, in those instances when Defendants actually paid Plaintiffs for their services, Defendants engaged in mail fraud, 18 U.S.C.A. § 1341. Defendants First and Sixth paid Plaintiffs, who removed their feed byproduct and solid waste generated in New York and transported it to Garden Operation Realty LP's location in New Jersey and mailed Garden Operation Realty checks to Plaintiffs in order to conceal the identity of the actual company performing the services. These actions were taken under the direct instructions of Defendant, Helmer Toro. Defendants used telephones and facsimiles to fraudulently transfer assets and conceal their identities to defraud creditors including Plaintiffs, thus engaging in wire fraud.

c. Also, Defendants engaged in wire and mail fraud, 18 U.S.C.A. § 1343 and §1341. with the constant transfer of money between companies. Garden Operation Realty LP was funded to begin operations through a "loan" from First and Sixth of approximately $3 million. What is repaid, including interest, if any, is up to Defendant, Helmer Toro's discretion. Further, as mentioned earlier, Garden Operation Realty LP has no assets. Its equipment and building are owned by Sixth. What Garden Operation Realty LP pays for this usage, if any, is determined at the discretion of Defendant, Helmer Toro. Further, Garden Operation Realty LP occasionally paid its bills (to vendors) by wire transfer with money from Third and Sixth. Minimal funds are kept in Garden Operation Realty LP's accounts, funded by transfers between the multiple companies. All of these transfers are used by Defendants to fraudulently transfer assets and conceal their identities to defraud creditors, including Plaintiffs.

d.  Defendant, Jersey Employee Services Corp., utilizes an independent payroll service to produce the fraudulent "paychecks." It uses the wires to communicate the amounts of hours worked by the employees, so that the payroll service can prepare these checks which, without the independent payroll service's knowledge are fraudulent as they will never be funded. The independent payroll service then uses the mails to send these fraudulent checks to Defendant, Jersey Employee Services Corp., for distribution to the employees. These actions thus constitute the predicate acts of mail fraud, 28 U.S.C. § 1341, and wire fraud, 28 U.S.C. § 1343.

e.  Defendants utilized each transaction to conceal the nature, location, source, ownership and/or control of the funds in violation of the of the requirement to report such funds under federal law and the Internal Revenue Code in violation of the predicate act of money laundering, 18 U.S.C. § 1956.

101. These communications and transfers occurred and continue to occur on a continuous basis, constituting a pattern of racketeering activity.

102. These communications and transfers were made with the intent and under the scheme to defraud Plaintiffs and conceal assets.

103. Each of these predicate acts were continuous and related, in that they were part of an ongoing enterprise to fraudulently obtain goods and services.

104. Each of these Defendants functioned together in combination by conducting activities these predicate acts and their enterprise outside and apart from the normal, legal activities of the Corporate Defendants, namely the manufacture and sale of bagels.

105. These acts have continued for years, and were specifically aimed at Plaintiffs during the period of their commercial activities from 2007 through 2009, and continue today to defraud Plaintiffs pursuant to their contract with Defendants, which was to run through 2012, and to thwart their collection efforts, and to defraud other creditors.

106. Defendants are involved in multiple enterprises that work together as one enterprise to manufacture and sell bagels that they transport across state lines in interstate commerce.

107. As a direct and proximate result thereof, Plaintiffs have been damaged.

15

108. Therefore, Defendants violated Title 18 <u>USC</u> § 1964, *et seq.*

## SECOND COUNT
### (Violations of New Jersey's Uniform Fraudulent Transfer Act Against All Defendants)

109. All allegations of paragraphs 1 through 108 are incorporated herein as though repeated verbatim and at length.

110. As set forth above, Helmer Toro used and continues to use his power over the corporations and limited partnerships, for which he has managerial authority, to transfer assets with the actual intent of defrauding Plaintiffs to avoid paying Plaintiffs what is owed to them.

111. As set forth above, these funds, assets and payoffs were transferred between the Defendants-business entities without receiving a reasonably equivalent value in exchange for the transfers.

112. As set forth above, these funds, assets and payoffs were transferred for the sole reason of concealing their identity, location, and avoiding creditors, including Plaintiffs.

113. Further, Defendant, Helmer Toro, individually and through his companies, transferred money and assets out of the possession of the judgment debtors and into the possession of his wife, Amy Dukoff Toro, an "insider" who knowingly and voluntarily assisted and participated in these transfers with the express interest of deceiving plaintiffs and avoiding the debts of the other Defendants.

114. Said transfer was without reasonably equivalent consideration.

115. All of the above transfers and conveyances were between "insiders."

116. All of the above transfers and conveyances were made with the actual intent to defraud defendants' creditors, the Plaintiffs.

117. All of the above transfers and conveyances were made without equivalent or fair value or consideration in exchange.

118. All of the above transfers and conveyances left the Defendants with assets worth less than their debts.

119. All of the above transfers and conveyances were made with the knowledge of Defendants that they would leave the Defendant/judgment debtors without sufficient assets to pay the debts they were incurring and/or about to incur.

120. As a direct and proximate result, Plaintiffs have been damaged.

121. Defendants are therefore liable to Plaintiffs for violation of New Jersey's Uniform Fraudulent Transfer Act, <u>N.J.S.A</u>. § 25:2-20.

### THIRD COUNT
**(Violation of New York's Fraudulent Conveyances Act Against All Defendants)**

122. All allegations of paragraphs 1 through 121 are incorporated herein as though repeated verbatim and at length.

123. Some of the assets transferred above were transferred to and/or from New York persons or entities to avoid the debts in New Jersey.

124. The actions set forth above in the in the Facts Section and the Second Count thus also constitute violation of New York's Fraudulent Conveyances Act, <u>McKinney's Debtor and Creditor Law</u>, §§ 270-281.

125. As a direct and proximate result, Plaintiffs have been damaged.

### FOURTH COUNT
**(Conspiracy)**

126. All allegations of paragraphs 1 through 126 are incorporated herein as though repeated verbatim and at length.

127. Defendants and each of them entered into a combination, acting in concert to commit unlawful acts, namely Counts One through Three above, or, in the alternative, to commit lawful

transfers by the unlawful means above.

128. Defendants and each of them entered into an agreement to take such unlawful overt acts to inflict the harms and injuries against plaintiffs complained above.

129. As a direct and proximate result thereof, plaintiffs have been damaged.

130. Defendants and each of them are liable to plaintiffs for conspiracy.

**WHEREFORE**, plaintiffs, **WILENTA FEED, INC.** and **WILENTA CARTING, INC.,** demand judgment against Defendants, **HELMER TORO, AMY DUKOFF TORO, PHILIP TORO, THE FIRST TORO FAMILY LP, THE THIRD TORO FAMILY LP, THE FOURTH TORO FAMILY LP, THE FIFTH TORO FAMILY LP, THE SIXTH TORO FAMILY LP, 35 REAL ESTATE LP, GARDEN OPERATION REALTY LP, GARDEN OPERATION CORP., MANHATTAN WEST SIDE LP, MANHATTAN EMPLOYEE SERVICE, INC., WESTMILL LP, WINGATE LP, UNITED PRODUCTION SERVICE, INC., CITYWIDE SERVICING GROUP, INC., JERSEY EMPLOYEE SERVICE CORP, HUDSON SALES AND MARKETING, INC., YXZ III, INC., QRS II, INC., TUV V, INC., SRQ IV, INC., ABC ENTITIES 1-10, JOHN DOES and JANE DOES 1-10** for compensatory damages, statutory damages, punitive damages, enjoining further disposition of the transferred assets, voiding of fraudulent transfers, attachment against the transferred assets or other property of the transferees, reasonable attorney's fees, costs of suit

incurred and such other relief as the Court may deem just, proper, and appropriate under the circumstances.

                                        Respectfully submitted,
                                        McLaughlin & Nardi, LLC
                                        Attorneys for the plaintiffs,
                                        Wilenta Feed, Inc. and Wilenta Carting, Inc.

                        by:     _____
                                        Maurice W. McLaughlin
                                        A member of the firm

Dated: December 14, 2010

## JURY DEMAND

Plaintiffs demand trial by jury.

                                        McLaughlin & Nardi, LLC
                                        Attorneys for the Plaintiffs, Wilenta Feed, Inc. and
                                        Wilenta Carting, Inc.

                        by:     _____
                                        Maurice W. McLaughlin
                                        A Member of the Firm

Dated: December 14, 2010

incurred and such other relief as the Court may deem just, proper, and appropriate under the circumstances.

Respectfully submitted,
McLaughlin & Nardi, LLC
Attorneys for the plaintiffs,
Wilenta Feed, Inc. and Wilenta Carting, Inc.

by:   /s/ Maurice W. McLaughlin
Maurice W. McLaughlin
A member of the firm

Dated: December 14, 2010

### JURY DEMAND

Plaintiffs demand trial by jury.

McLaughlin & Nardi, LLC
Attorneys for the Plaintiffs, Wilenta Feed, Inc. and
Wilenta Carting, Inc.

by:   /s/ Maurice W. McLaughlin
Maurice W. McLaughlin
A Member of the Firm

Dated: December 14, 2010

19

≪JS 44  (Rev. 12/07, NJ 5/08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Wilenta Feed, Inc. and Wilenta Carting, Inc.

**(b)** County of Residence of First Listed Plaintiff  Hudson

**(c)** Attorney's (Firm Name, Address, Telephone Number and Email Address)

McLaughlin & Nardi, LLC
37 Vreeland Avenue
Totowa, NJ 07512
973-890-0004
maurice.mclaughlin@esqni.com

## DEFENDANTS

HELMER TORO, AMY DUKOFF TORO, PHILIP TORO  THE FIRST TORO FAMILY LP, THE THIRD TORO FAMILY LP, ▪

County of Residence of First Listed Defendant  New York County

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

Brian I. Confino, Esq.

## II. BASIS OF JURISDICTION    (Place an "X" in One Box Only)

- ❏ 1  U.S. Government Plaintiff
- ❏ 2  U.S. Government Defendant
- ✖ 3  Federal Question (U.S. Government Not a Party)
- ❏ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                          and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ❏ 1 | Incorporated or Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated and Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | ❏ 610 Agriculture | ❏ 422 Appeal 28 USC 158 | ❏ 400 State Reapportionment |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 620 Other Food & Drug | ❏ 423 Withdrawal | ❏ 410 Antitrust |
| ❏ 130 Miller Act | ❏ 315 Airplane Product Liability | ❏ 625 Drug Related Seizure of Property 21 USC 881 | 28 USC 157 | ❏ 430 Banks and Banking |
| ❏ 140 Negotiable Instrument | ❏ 320 Assault, Libel & Slander | ❏ 630 Liquor Laws | **PROPERTY RIGHTS** | ❏ 450 Commerce |
| ❏ 150 Recovery of Overpayment & Enforcement of Judgment | ❏ 330 Federal Employers' Liability | ❏ 640 R.R. & Truck | ❏ 820 Copyrights | ❏ 460 Deportation |
| ❏ 151 Medicare Act | ❏ 340 Marine | ❏ 650 Airline Regs. | ❏ 830 Patent | ✖ 470 Racketeer Influenced and Corrupt Organizations |
| ❏ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ❏ 345 Marine Product Liability | ❏ 660 Occupational Safety/Health | ❏ 840 Trademark | ❏ 480 Consumer Credit |
| ❏ 153 Recovery of Overpayment of Veteran's Benefits | ❏ 350 Motor Vehicle | ❏ 690 Other | **LABOR** | ❏ 490 Cable/Sat TV |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle Product Liability | | ❏ 710 Fair Labor Standards Act | ❏ 810 Selective Service |
| ❏ 190 Other Contract | ❏ 360 Other Personal Injury | | ❏ 720 Labor/Mgmt. Relations | **SOCIAL SECURITY** |
| ❏ 195 Contract Product Liability | **PERSONAL INJURY** | | ❏ 730 Labor/Mgmt Reporting & Disclosure Act | ❏ 861 HIA (1395ff) |
| ❏ 196 Franchise | ❏ 362 Personal Injury - Med. Malpractice | | ❏ 740 Railway Labor Act | ❏ 862 Black Lung (923) |
| **REAL PROPERTY** | ❏ 365 Personal Injury - Product Liability | | ❏ 790 Other Labor Litigation | ❏ 863 DIWC/DIWW (405(g)) |
| ❏ 210 Land Condemnation | ❏ 368 Asbestos Personal Injury Product Liability | | ❏ 791 Empl. Ret. Inc. Security Act | ❏ 864 SSID Title XVI |
| ❏ 220 Foreclosure | **PERSONAL PROPERTY** | | | ❏ 865 RSI (405(g)) |
| ❏ 230 Rent Lease & Ejectment | ❏ 370 Other Fraud | | | **FEDERAL TAX SUITS** |
| ❏ 240 Torts to Land | ❏ 371 Truth in Lending | | | ❏ 870 Taxes (U.S. Plaintiff or Defendant) |
| ❏ 245 Tort Product Liability | ❏ 380 Other Personal Property Damage | | | ❏ 871 IRS—Third Party 26 USC 7609 |
| ❏ 290 All Other Real Property | ❏ 385 Property Damage Product Liability | | | |
| **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ❏ 875 Customer Challenge 12 USC 3410 |
| ❏ 441 Voting | ❏ 510 Motions to Vacate Sentence | | | ❏ 890 Other Statutory Actions |
| ❏ 442 Employment | **Habeas Corpus:** | | | ❏ 891 Agricultural Acts |
| ❏ 443 Housing/ Accommodations | ❏ 530 General | | | ❏ 892 Economic Stabilization Act |
| ❏ 444 Welfare | ❏ 535 Death Penalty | | | ❏ 893 Environmental Matters |
| ❏ 445 Amer. w/Disabilities - Employment | ❏ 540 Mandamus & Other | | | ❏ 894 Energy Allocation Act |
| ❏ 446 Amer. w/Disabilities - Other | ❏ 550 Civil Rights | **IMMIGRATION** | | ❏ 895 Freedom of Information Act |
| ❏ 440 Other Civil Rights | ❏ 555 Prison Condition | ❏ 462 Naturalization Application | | ❏ 900 Appeal of Fee Determination Under Equal Access to Justice |
| | | ❏ 463 Habeas Corpus - Alien Detainee | | ❏ 950 Constitutionality of State Statutes |
| | | ❏ 465 Other Immigration Actions | | |

## V. ORIGIN     (Place an "X" in One Box Only)

- ✖ 1  Original Proceeding
- ❏ 2  Removed from State Court
- ❏ 3  Remanded from Appellate Court
- ❏ 4  Reinstated or Reopened
- ❏ 5  Transferred from another district (specify)
- ❏ 6  Multidistrict Litigation
- ❏ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
18 USC 1341 and 18 USC 1343

Brief description of cause:
Fraudulent transfers by and between Defendants through mail, wire and other means.

## VII. REQUESTED IN COMPLAINT:

❏ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $  227,220.52

CHECK YES only if demanded in complaint:
JURY DEMAND:  ✔ Yes  ❏ No

## VIII. RELATED CASE(S)
(See instructions):

JUDGE  Barry P. Sarkisian

DOCKET NUMBER  HUD-L-2633-10

Explanation:  Defendants used RICO acts and fraudulent transfers in commerce to avoid debts including Hudson County judgment above. Plaintiffs demand punitive and statutory damages plus counsel fees and costs.

DATE
12/14/2010

SIGNATURE OF ATTORNEY OF RECORD

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.      (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.      Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.      Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.      Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.      Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.      Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**          Example:          U.S. Civil Statute: <u>47 USC 553</u>
Brief Description: <u>Unauthorized reception of cable service</u>

**VII.      Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.      Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases. Provide a brief explanation of why the cases are related.

**Date and Attorney Signature.** Date and sign the civil cover sheet.